*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

STEPHEN E. CONNOR,

          Plaintiff-Appellant,

v

UNEMPLOYMENT INSURANCE AGENCY,

          Defendant-Appellee.

UNPUBLISHED
December 19, 2024
10:13 AM

No. 368425
Court of Claims
LC No. 23-000101-MM

Before: BORRELLO, P.J., and MALDONADO and WALLACE, JJ.

PER CURIAM.

Plaintiff appeals as of right the Court of Claims' order and opinion dismissing plaintiff's complaint against the state's Unemployment Insurance Agency (UIA) pursuant to MCR 2.116(C)(4) (lack of subject-matter jurisdiction). We affirm.

## I. BACKGROUND

Plaintiff filed a complaint against the UIA in the Court of Claims and alleged that when he initially applied for unemployment benefits on November 4, 2020, he provided his employers' names, addresses, and telephone numbers as required. However, plaintiff alleged that the UIA improperly denied his claim because he had zero wages for the claimed benefit period. Plaintiff further asserted that he filed a protest; submitted his pay stubs from July 19, 2020, to November 6, 2020, to the UIA through the Michigan Web Account Manager website; and that the UIA assured him during the course of 16 telephone appointments that these documents were "easily visible, available and accessible" to its investigator. Nevertheless, the UIA issued a "monetary redetermination" denying his claim, again stating that he earned zero wages during the claimed benefit period.

Plaintiff alleged that he then appealed the UIA's redetermination and submitted his wage evidence directly to an administrative law judge (ALJ), again detailing his wages from July 19, 2020, through November 6, 2020. During the administrative hearing, the ALJ allegedly acknowledged receipt of that wage evidence, reviewed each paystub in detail, and discussed plaintiff's October and November 2020 wages on the record. However, the ALJ allegedly excluded or disregarded those earnings and determined that plaintiff was not entitled to unemployment benefits

-1-

because "no evidence was presented for wages earned in the fourth calendar quarter."[1] Plaintiff then appealed the ALJ's decision to the Unemployment Insurance Appeals Commission (UIAC), asserting that the ALJ had erroneously excluded his fourth-quarter wage evidence, but the UIAC affirmed. Thereafter, plaintiff filed a complaint in the circuit court. Plaintiff alleged that this complaint was dismissed by stipulation so that plaintiff could bring this case in the Court of Claims.

---

[1] The calculation of plaintiff's entitlement to unemployment benefits is not before this Court. However, we note that MCL 421.45 defines "base period" as follows:

> [B]ase period means the first 4 of the last 5 completed calendar quarters before the first day of the individual's benefit year. However, if an individual has not been paid sufficient wages in the first 4 of the last 5 completed calendar quarters to entitle the individual to establish a benefit year, then base period means the 4 most recent completed calendar quarters before the first day of the individual's benefit year.

MCL 421.46(b) defines "benefit year" as "the period of 52 consecutive calendar weeks beginning the first calendar week in which an individual files a claim . . ." and further provides that a

> benefit year shall not be established unless the individual meets either of the following conditions:
>
> (1) The total wages paid to the individual in the base period of the claim equals not less than 1.5 times the wages paid to the individual in the calendar quarter of the base period in which the individual was paid the highest wages.
>
> (2) The individual was paid wages in 2 or more calendar quarters of the base period totaling at least 20 times the state average weekly wage as determined by the unemployment agency.

Plaintiff asserted that he filed his claim for unemployment benefits on November 4, 2020. Accordingly, his "benefit year," if he can establish one, began in the first calendar week of November 4, 2020. Plaintiff reported wages for July 19, 2020 through November 6, 2020, thus from only the third-calendar quarter (July 1, 2020 to September 30, 2020) and the fourth-calendar quarter (October 1, 2020 to December 31, 2020). Under MCL 421.45, his "base period" is made up of the four most recent *completed* calendar quarters *before* November 2, 2020, the first calendar week in which he filed his claim, or from October 1, 2019 to September 30, 2020. Accordingly, while plaintiff's third-quarter wages were included in the base period, his fourth-quarter wages were not. Therefore, it appears that the ALJ properly excluded his fourth-quarter wages in analyzing whether he qualified for benefits. And, because plaintiff reported wages only in the third-calendar quarter of the base period, he did not have wages in two or more calendar quarters of the base period, and thus could not establish a benefit year under MCL 421.46(b)(2). And, because his total wages in the base period equals the wages in the calendar quarter in which he had the highest wages (the third quarter), he cannot establish a benefit year under MCL 421.46(b)(1) either, which requires that the total wages paid in the base period be not less than 1.5 times the wages paid in the calendar quarter of the base period in which he was paid the highest wages.

Along with his complaint, plaintiff filed a motion seeking summary disposition pursuant to MCR 2.116(C)(10) (no genuine issue of material fact). The UIA countered with its own motion seeking summary disposition pursuant to MCR 2.116(C)(4), arguing that the Court of Claims lacked subject-matter jurisdiction. According to the UIA, the circuit court held exclusive jurisdiction to hear appeals from UIAC decisions regarding unemployment benefits. To the extent plaintiff attempted to plead a tort claim, the UIA sought summary disposition pursuant to MCR 2.116(C)(8) (failure to state a claim). The Court of Claims dismissed plaintiff's complaint for lack of subject-matter jurisdiction, reasoning that the gravamen of plaintiff's complaint was an appellate challenge to the UIAC's decision denying plaintiff's unemployment claim. This appeal followed.

## II. DISCUSSION

Plaintiff argues that the Court of Claims erred by concluding that it lacked subject-matter jurisdiction because this action was a constitutional tort against the UIA, not an appeal from the decision of the UIAC. We disagree.

"This Court reviews de novo the grant or denial of summary disposition." *Daystar Seller Fin, LLC v Hundley*, 326 Mich App 31, 34; 931 NW2d 15 (2018). Summary disposition pursuant to MCR 2.116(C)(4) is appropriate if "the court lacks jurisdiction of the subject matter." *Daystar*, 326 Mich App at 34 (quotation marks, citation, and alteration omitted). "[W]hether a trial court had subject-matter jurisdiction over a claim is a question of law that is reviewed de novo." *Daystar*, 326 Mich App at 35 (quotation marks and citation omitted; alteration in original). Further, "statutory interpretation is a question law that this Court reviews de novo." *Cork*, 239 Mich App at 316. Finally, questions of constitutional law are reviewed de novo. *In re Ferranti*, 504 Mich 1, 14; 934 NW2d 610 (2019).

The central dispute in this case is whether exclusive jurisdiction rested in the circuit court or the Court of Claims. "Generally, subject-matter jurisdiction is defined as a court's power to hear and determine a cause or matter." *O'Connell v Director of Elections*, 316 Mich App 91, 100; 891 NW2d 240 (2016) (quotation marks and citation omitted). "More specifically, subject-matter jurisdiction is the deciding body's authority to try a case of the kind or character pending before it, regardless of the particular facts of the case." *Id.* (quotation marks and citation omitted). "The question of jurisdiction does not depend on the truth or falsity of the charge, but upon its nature: it is determinable on the commencement, not at the conclusion, of the inquiry." *Workers Compensation Agency Dir v MacDonald's Indus Prod*, 305 Mich App 460, 478; 853 NW2d 467 (2014) (quotation marks and citation omitted). "Jurisdiction always depends on the allegations and never upon the facts." *Id.* (quotation marks and citation omitted).

"Circuit courts have original jurisdiction to hear and determine all civil claims and remedies, except where exclusive jurisdiction is given in the constitution or by statute to some other court or where the circuit courts are denied jurisdiction by the constitution or statutes of this state." MCL 600.605. Additionally, the circuit court has "appellate jurisdiction from all inferior courts and tribunals except as otherwise provided by law." Const 1963, art 6, § 13. "Thus the circuit court is presumed to have subject-matter jurisdiction over a civil action unless Michigan's Constitution or a statute expressly prohibits it from exercising jurisdiction or gives to another court exclusive jurisdiction over the subject matter of the suit." *O'Connell*, 316 Mich App at 101

(quotation marks and citation omitted). On the other hand, "[t]he Court of Claims is created by statute and the scope of its subject-matter jurisdiction is explicit." *Id*. (quotation marks and citation omitted). Section 6419 of the Court of Claims Act, MCL 600.6401 *et seq*., assigns the Court of Claims exclusive jurisdiction

> To hear and determine any claim or demand, statutory or constitutional, liquidated or unliquidated, ex contractu or ex delicto, or any demand for monetary, equitable, or declaratory relief or any demand for an extraordinary writ against the state or any of its departments[2] or officers notwithstanding another law the confers jurisdiction of the case in the circuit court. [MCL 600.6419(1)(a).]

Importantly this provision "does not deprive the circuit court of exclusive jurisdiction over appeals from the district court and administrative agencies as authorized by law."

The procedures for seeking collection of unemployment insurance benefits are laid out in the Michigan Employment Security Act (MESA), MCL 421.1 *et seq*. MCL 421.32(a) provides the UIA with authority to determine the validity of an unemployment-benefit claim, including with regard to the amount and duration of benefits to be paid. Thereafter, a claimant has a "[l]egal right to protest the determination and the right to appeal through the administrative hearing system," MCL 421.32(i)(*iii*). These administrative remedies include requesting a redetermination by the UIA, MCL 421.32a(1), challenging the UIA's decision at an administrative hearing before an ALK, MCL 421.33(1), and appealing to the UIAC. MCL 421.33(2); MCL 421.34. After exhausting the administrative review process, MCL 421.38 provides that the circuit court "may review questions of fact and law on the record made before the administrative law judge and the Michigan compensation appellate commission[3] involved in a final order or decision of the Michigan compensation appellate commission . . . ." Thus, "[j]urisdiction for the limited judicial review available" for decisions regarding unemployment benefits "is vested exclusively with designated circuit courts." *Peplinski v Mich Employment Security Comm*, 359 Mich 665, 668; 103 NW2d 454 (1960).

Plaintiff attempts to avoid the requirement that appeals from decisions of the UIAC be brought in the circuit court by dressing his claim as a constitutional tort. "Typically, a constitutional tort claim arises when a governmental employee, exercising discretionary powers, violates constitutional rights personal to a plaintiff. . . . The first step in recognizing a damage remedy for injury consequent to a violation of our Michigan Constitution is, obviously, to establish the constitutional violation itself." *Mays v Snyder*, 323 Mich App 1, 57; 916 NW2d 227 (2018) (quotation marks and citations omitted). Plaintiff argues that defendant violated his "constitutional

---

[2] "The state or any of its departments" includes a state commission or agency. MCL 600.6419(7).

[3] Effective August 11, 2019, the Governor, in Executive Reorganization Order No. 2019-13, created the UIAC and transferred the Michigan Compensation Appellate Commission's responsibilities to the UIAC. See MCL 125.1998(2)(g) and (3)(n). See also *Martin v Mich Unemployment Ins Agency*, 511 Mich 1002 n 1; 991 NW2d 209 (2023) ("The Michigan Compensation Appellate Commission has been replaced, in relevant part, by the Unemployment Insurance Appeals Commission.").

-4-

right to a fair investigation." Michigan's 1963 Constitution provides, "The right of all individuals, firms, corporations and voluntary associations to fair and just treatment in the course of legislative and executive investigations and hearings shall not be infringed." Const 1963, art I, § 17. Thus, this case turns on whether plaintiff has pled a constitutional tort or whether his complaint is actually an appeal from the decision of the UIAC. "It is well settled that the gravamen of an action is determined by reading the complaint as a whole, and by looking beyond mere procedural labels to determine the exact nature of the claim." *Adams v Adams*, 276 Mich App 704, 710-711; 742 NW2d 399 (2007).

As a threshold matter, plaintiff is correct that defendant cannot assert sovereign immunity as a defense to constitutional torts. See *Mays v Governor of Mich*, 506 Mich 157, 187; 954 NW2d 139 (2020) (recognizing that "when a plaintiff brings a 'constitutional tort' action against the state, in certain instances, the government is not immune from liability for violations of its Constitution"). Regardless, we agree with the Court of Claims that plaintiff's complaint was "more accurately characterized as a petition for judicial review under MCL 421.38 than as a complaint" because plaintiff's allegations "essentially constitute a claim that the Agency's ALJ's, and Commission's determinations are unsupported by competent, material, and substantial evidence on the whole record," a claim which "may only be advanced in an appeal to the circuit court." It is clear that the gravamen of this action is an appeal of the UIAC's decision to affirm the UIA's denial of unemployment benefits. At its core, this case is not about an investigation, it is about whether the UIA's findings were defensible in light of the evidence defendant presented. As the Court of Claims noted, plaintiff opened his complaint by stating that he brought "this case pursuant to an appeal to the Unemployment Insurance Appeals Commission." Further, plaintiff never used the term "tort" in his complaint, nor did he cite the constitutional provision upon which he now relies until the 25th paragraph of his 28-paragraph complaint. While the complaint was filled with citations to MESA, this statement that the UIA "deliberately failed to provide 'fair treatment' throughout this investigation" was the only reference made to the Michigan 1963 Constitution. The bulk of the complaint was about the evidence plaintiff presented at the various stages of the administrative process and how the administrative findings were not consistent with this evidence. Further, the fact that plaintiff's claim does not truly sound in tort is evidenced by the remedy sought. Plaintiff asked the Court of Claims to apply MCL 421.46(b)(1) to conclude that he was entitled to $21,520.78 pursuant to MESA. Defendant further asked the Court of Claims to apply MCL 421.54 to award sanctions equally 3 times his benefit entitlement.[4] In essence, defendant asked the Court of Claims to override the UIAC's application of the relevant statutory framework.

Plaintiff also invokes the doctrine of judicial estoppel to suggest that defendant should be barred from asserting jurisdiction as a defense because defendant stipulated to dismissing the circuit action and proceeding in the Court of Claims. "Judicial estoppel is an equitable doctrine, which generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Spohn v Van Dyke Pub Sch*, 296 Mich App 470, 479; 822 NW2d 239 (2012) (quotation marks and citation omitted).

---

[4] Plaintiff seems to misunderstand MCL 421.54 because it provides that the UIA may recover sanctions if a claimant or employer intentionally fails to comply with MESA, not the inverse.

However, "[c]hallenges to subject-matter jurisdiction cannot be waived, and a court must entertain such challenges regardless of when they are raised, or even raise such challenges sua sponte." *O'Connell*, 316 Mich App at 100 (citations omitted). Indeed, a court is "continually obliged to question sua sponte its own jurisdiction over . . . the subject matter of an action[.]" *Id.* (quotation marks and citation omitted). Therefore, a party cannot be judicially estopped from asserting that a court lacks subject matter jurisdiction. See *Winters v Dalton*, 207 Mich App 76, 79; 523 NW2d 636 (1994) ("Were the issue here any other than that of the circuit court's subject-matter jurisdiction, we would invoke the doctrine of judicial estoppel . . . . However, we are bound to take notice of the limits of the circuit court's subject-matter jurisdiction.").

In sum, the gravamen of this action is an appeal from the UIAC, so the Court of Claims properly dismissed this action because it lacked subject-matter jurisdiction.

Affirmed.

/s/ Stephen L. Borrello
/s/ Allie Greenleaf Maldonado
/s/ Randy J. Wallace